LATHROP & GAGE LLP
John Shaeffer, Esq. (State Bar No. 138331)
jshaeffer@lathropgage.com
Jeffrey H. Grant, Esq. (State Bar No. 218974)
jgrant@ lathropgage.com
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 789-4600
Fax: (310) 789-4601

Attorneys for Plaintiff
Local.com Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL.COM CORPORATION, a Delaware Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>FRY'S ELECTRONICS, INC., a California Corporation,<br><br>              Defendant. | CASE NO. 12-CV-976 JGB (JPRx)<br><br>**LOCAL.COM CORPORATION'S OPPOSITION TO FRY'S CLAIM CONSTRUCTION BRIEF**<br><br> Hearing Date:  August 28, 2013<br> Hearing Time: 10:00 a.m. |
| FRY'S ELECTRONICS, INC., a California Corporation,<br><br>              Counter-Claimant,<br><br>       v.<br><br>LOCAL.COM CORPORATION, a Delaware Corporation,<br><br>              Counter-Defendant. | |

1

# TABLE OF CONTENTS

2

I. INTRODUCTION ........................................................................................... 1

3

II. FRY'S OPENING CLAIM CONSTRUCTION BRIEF FOCUSES
4   PRIMARILY ON ISSUES UNRELATED TO CLAIM
5   CONSTRUCTION ......................................................................................... 2

6       A.   Fry's Invalidity Arguments Have No Bearing on Claim
             Construction ......................................................................................... 2
7

8       B.   Fry's Claim Construction Brief Also Discusses the
             Defenses of Practicability and File History Estoppel, But
9            Fails to Tether Either to Claim Construction................................... 3

10  III. DISPUTED CLAIM CONSTRUCTION.................................................. 4

11      A.   "Providing . . . detecting . . . providing"......................................... 4
12
        B.   "Automatically Generating" with respect to "Search String"
13           and "Search Request" ...................................................................... 7
14
        C.   "Cascading Menu" .............................................................................. 11
15
        D.   "Customer"............................................................................................ 13
16

17  IV. CONCLUSION .......................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

LOCAL.COM'S OPPOSITION TO FRY'S CLAIM CONSTRUCTION BRIEF

# <u>TABLE OF AUTHORITIES</u>

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp,*
  *Inc.*, 249 F.3d 1341 (Fed. Cir. 2001) ................................................................6, 10

*Budde v. Harley-Davidson, Inc.*,
  250 F.3d 1369 (Fed. Cir. 2001) .........................................................................2

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed Cir. 2005) ........................................................................2, 3

*Duraflame, Inc. v. Hearthmark, LLC*,
  2013 WL 594241 (N.D. Cal. Feb. 14, 2013) ...................................................6, 10

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
  244 F.3d 1365 (Fed. Cir. 2001) .......................................................................6, 10

*Nazomi Communications, Inc. v. ARM Holdings, PLC*,
  403 F.3d 1364 (Fed. Cir. 2005) .........................................................................3

*Philips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ...................................................................2, 10, 14

*Rhine v. Casio, Inc.*,
  183 F.3d 898 (Fed. Cir. 1999) ...........................................................................2

*Smith v. Snow*,
  294 U.S. 1 (1935) ..............................................................................................3

Plaintiff and Counter-Defendant Local.com Corporation ("Local.com") submits this response to the Opening Claim Construction Brief submitted by Defendant and Counter-Claimant Fry's Electronics, Inc. ("Fry's").[1]

I.  **INTRODUCTION**

Fry's Opening Claim Construction Brief breezes through numerous issues of invalidity and infringement, few of which have any bearing on claim construction whatsoever.  While the Brief also identifies a series of tools that are relevant to claim construction, such as the prosecution history of the patent-in-suit, U.S. Patent No. 7,062,453 (the "'453 Patent"), Fry's fails to actually use those tools to construe claim terms.  Fry's Brief proposes constructions fails to tie those constructions to the patent or the rules governing claim construction.

Fry's urges the Court to construe the terms "providing," "detecting," "providing," "automatically generating," "search string," "search request," "cascading commerce menu," and "customer."  Fry's offers tortured constructions, devoid of common sense, in a transparent attempt to further its invalidity and infringement positions.  As addressed in Local.com's own Claim Construction Brief (Dkt. No. 58), these terms can be readily understood by the trier of fact and need not be construed.  In any event, if the Court decides to construe these terms, it should not adopt the constructions proposed by Fry's.

---

[1] Fry's asserts that it filed its Opening Brief "pursuant to Court's Orders of April 23 and May 12, 2009," which would have been issued three years before the above-entitled action was instituted. Dkt. No. 59 at 4:1-2.  Based on the Court's instructions at the June 10, 2013, hearing, Local.com believed that the parties would abide by the usual motion practice in accordance with which Local.com filed an opening brief, Fry's filed an opposition and Local.com filed a reply.  This understanding is consistent with the Court's July 10, 2013, written Order (Dkt. No. 56), which directed the parties to abide by the Local Rules regarding regularly noticed motions.  Local.com believes that Fry's Opening Brief is improper.

II.   **FRY'S OPENING CLAIM CONSTRUCTION BRIEF FOCUSES PRIMARILY ON ISSUES UNRELATED TO CLAIM CONSTRUCTION**

A.   **Fry's Invalidity Arguments Have No Bearing on Claim Construction**

Although the issue before the Court is claim construction, much of Fry's Brief concerns itself with poorly supported assertions that the '453 Patent is invalid.  While the Court's construction of terms can impact the ultimate validity of a patent, Fry's put the proverbial cart before the horse.  Fry's must first convince this Court to adopt its tortured construction before Fry's has any likelihood of convincing a trier of fact that the '453 Patent is invalid by clear and convincing evidence.  *Budde v. Harley-Davidson, Inc*., 250 F.3d 1369, 1380-81 (Fed. Cir. 2001).

Discussions regarding the validity of a patent, unhinged from an accompanying point about claim construction, are inappropriate at the claim construction phase of the litigation.  *See e.g. Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1304 (Fed Cir. 2005) ("Cross Medical's argument that we should consider the validity of claim 5 in construing the [corresponding structure of the means-plus-function] limitation misses the mark.  Because the other claim construction tools unambiguously resolve the claim construction dispute, considering validity would be improper."); *see also Rhine v. Casio, Inc*., 183 F.3d 898, 911-12 (Fed. Cir. 1999) ("[The accused infringer] cannot avoid full blown validity analysis by raising the specter of invalidity during the claim construction phase.").

Fry's notes that "claims should be construed to preserve their validity." *Philips v. AWH Corp*., 415 F.3d 1303, 1327 (Fed. Cir. 2005).  "[I]f the claim is fairly susceptible of two constructions, that should be adopted which will secure to the patentee his actual invention, rather than to adopt a construction fatal to the

grant." *Smith v. Snow*, 294 U.S. 1, 14 (1935). Perverting these guiding principles, Fry's Brief proposes interpretations that would invalidate the claims but fails to articulate why the terms are susceptible to Fry's proffered constructions. Additionally, Fry's fails to establish that other claim construction tools cannot resolve the ambiguity. *Cross Medical Products*, 424 F.3d at 1304; *Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1372 (Fed. Cir. 2005) (cautioning trial court from mixing prior art and claim construction; "The scope of the claim invariably affects its relationship to prior art, but courts are not in a posture to alter the claim scope and those relationships.").

In support of its misplaced invalidity arguments, Fry's obliquely references several supposed pieces of prior art – but fails to actually submit the art itself. For example, Fry's makes passing reference to the "LLBean.com website and others" (Dkt. No. 59 at 8:13), but fails to provide the court with evidence of the "website and others" and fails to identify what effect it has on claim construction. Fry's also makes note of "Yagasaki [US 6,125,35], McCollum [US Application 2002/0010623], and PTO 892 U. Yagasaki" in a footnote,[2] but again provides no analysis or suggestion as to how this prior art is related to the claim construction at issue. Fry's Brief does not establish that prior art – not the plain language of the claims or the patent specifications – should govern the meaning of the claim terms.

**B.** **Fry's Claim Construction Brief Also Discusses the Defenses of Practicability and File History Estoppel, But Fails to Tether Either to Claim Construction**

Fry's also asserts arguments regarding the practicability of the '453 Patent as well as file history estoppel – but fails to connect either such arguments to a construction urged by Fry's. In particular, Fry's asserts that the prosecution

---

[2] For this reference, Fry's cites to Exhibit 4 at p. 31. Exhibit 4 to Fry's Opening Claim Construction Brief, however, does not have a page 31.

3

history of the '453 Patent demonstrates that Local.com abandoned the "link" claims during prosecution. While Fry's went to the trouble to file hundreds of pages of prosecution history, it fails to provide any citation to pages supporting its assertion. Fry's furthermore fails to make any discernible connection between this unsupported assertion and its proposed constructions. Fry's also mentions a Sanford patent (Dkt. No. 59 at 12:10) and the Windows operating system (*Id.* at 12:14-16) in passing, but fails to articulate what impact these have on claim construction. These failures essentially leave these arguments as unsupported defenses to infringement – a point inappropriate for claim construction.

## III.   DISPUTED CLAIM CONSTRUCTION

For all its bluster, Fry's Opening Claim Construction Brief spends very little time at the heart of the matter: the construction of the claims.[3] While Local.com provides both intrinsic and extrinsic support, Fry's offers little more than conclusions that the claims should mean what Fry's says they do.

### A.   "Providing . . . detecting . . . providing"

| Claim Term | Fry's Proposed Construction |
|---|---|
| "providing" [a first level menu]" | "is a specific act intended to lead to creating (or building) a first level menu from a downloaded text file." Dkt. No. 59 at 14:16-18. |
| "detecting [a position of a cursor over a first product category listed in said first set of product categories]" | "means the commerce menu server detects." Dkt. No. 59 at 14:20-23. |

---

[3] Fry's asserts that its limited claim construction analysis is due to Local.com's refusal to provide constructions. In actuality, Local.com has maintained that these claims do not need construction and has requested Fry's proposed constructions, which Fry's has refused to provide. *See* Shaeffer Decl., Dkt. Nos. 58-3, 58-4, Exs. "B" and "C."

| "providing [a cascading second level menu]" | "is a separate specific act from providing step 1, after the commerce menu server detects "a position of a cursor over a first product category listed in said first set of product categories; intended to lead to the creating (or building) of a cascading second level menu" Dkt. No. 59 at 14:25-28. |
|---|---|

Fry's seeks to read in a claim limitation that the acts of "providing," "detecting," and "providing" must be *directly* and *contemporaneously* performed by the server.  This is nothing more than a tortured interpretation manufactured by Fry's to avoid a finding of infringement.  Fry's asks the Court to interpret those terms to require *direct* involvement from the server in each instance, such that the e-commerce server must itself "detect" the position of a cursor and, as a result, must itself "provid[e]" the user with a corresponding second level cascading menu. Fry's wants to argue at trial that its servers provided users with a complete cascading menu that included all of the product categories and product subcategories.  Fry's intends to argue that, once the user downloaded the Fry's complete cascading menu software package (in the JavaScript language) from Fry's servers, that it was either the software package or the user that was "detecting" the user's selection from the menus and "providing" menu subcategories.

Fry's additional claim limitations are at direct odds with the language of the asserted claims, which do not hint at the new requirements proposed by Fry's. Fry's construction is also at odds with the '453 Patent specifications (which, aside from the claims, are the best evidence of the scope of the claims).  The summary of the invention explicitly notes that the "cascading menu is dynamically generated using a program language…from a text file…."  Shaeffer Decl., Dkt. No. 58-2, Ex.

5

"A," Col. 1:44-46.  Perhaps even more fatal to Fry's construction, the '453 Patent also notes:

> Because one embodiment of the <u>cascading commerce menu is stored on the client side</u>, that is, on the consumer's computer or terminal, access to each submenu appears almost instantaneous to the user with a corresponding movement of the cursor.  <u>This contrasts to a conventional web page, where</u> typically the product categories are stored on the server, and <u>each new category or subcategory search requires communication over the Internet</u> to download a new web page.

Shaeffer Decl., Dkt. No. 58-2, Ex. "A," Col. 6:40-48 (emphasis added).

Local.com urges the Court to allow the commonly understood terms "providing," "detecting" and "providing" to stand on their own - without construction.  These terms are hardly technical terms that need elaboration or clarification, and therefore they should be applied in their widely accepted meaning.  *Philips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language ... may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *see also  Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding no error in non-construction of "melting"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in court's refusal to construe "irrigating" and "frictional heat"); *Duraflame, Inc. v. Hearthmark, LLC*, 2013 WL 594241, *3 (N.D. Cal. Feb. 14, 2013) ("The term 'artificial firelog' need not be construed. '[F]irelog' itself suggests the log-like shape and desired ambiance that Duraflame seeks to emphasize in its proposed construction.").

In the event, however, that the Court determines that a construction of these terms is required, Local.com proposes the following alternatives:

<u>providing</u>: supplying, via a programming language such as javascript, a user with a menu listing product categories

<u>detecting</u>: ascertaining, through interface with a programming language such as javascript, a user's selection of a product category

<u>providing</u>: supplying, via a programming language such as javascript, a user with the results of their search selection

If the terms require construction, principals of claim construction support adopting the constructions proposed by Local.com.

**B.** **"Automatically Generating" with respect to "Search String" and "Search Request"**

| Claim Term | Fry's Proposed Construction |
|---|---|
| "automatically generating" | "Using the menu system to assemble [a search request/search string] without requiring a user to manually enter this data." Dkt. No. 59 at 15:3-5. |
| "search string" | "One or more search terms comprised of one or more product-related characteristics or descriptive terms that can be used as criteria by a computerized search in order to locate a product or category of interest, as opposed to arbitrary symbols." Dkt. No. 59 at 15:9-12 |
| "search request" | "A request using a search string containing one or more product-related characteristics or descriptive search terms that can be used as criteria by a computerized search in order to locate a product or category of interest." Dkt. No. 59 at 15:14-17. |

In support of Fry's proposed construction for "automatically generating," Fry's asserts the following:

9.     The term "automatically generate" refers to the generation of search terms, as opposed to manual generation into a search box. The

existence of search boxes in the Figures illustrating the cascading
menus connotes the automatic generation of terms to be put into the
search boxes, either so the search terms show up there, or they are
simply generated without need to click on the search box.

10.    Automatic generation of the search terms into the search box
fits the description that the search request base [sic] "at least least [sic]
in part on said customer selection."  The other part can be manually
entered into the search box to augment what the automatic generation
has put into that search box. This is how ePilot actually functions
today.

Dkt. No. 59 at 17:19-18:2.

Local.com is at a loss to understand how Fry's arguments regarding a

"search box" and "how ePilot actually functions today" support Fry's

construction of "using a menu system to assemble [a search request/search

string]."  In any event, Local.com does not believe that the terms

"automatically" or "generate" or "automatically generate" need construction.

Fry's also offers construction for the equally commonly understood

terms "search string" and "search request."  Fry's bases its construction on

the following, all of which is *sic*:

7.    Regarding "search string" and "search request," the
specifications only describe classic search term and drill down menu
searches with keyword searches familiar to all who have used search
engines like Google, Yahoo, WestLaw, Lexis, etc., all described in the
Axaopoulos patent referenced in the file history and attached as Ex. 6,
where it references prior art comprising keyword search engines and
hierarchical search engines at Col. 1, 35- Col. 2, 46. This prior art
appears parallel the means described in the '453 patent. Axaopoulos
also describes the problems associated with such searches, something
that perhaps lead Local.com not to use this method in actual practice.

8.    The terms "search request" and "search string" are described in
the file history as comprising the same thing - the use of a search
string to perform a search and not the same as link.  Nothing, other
than keyword searches are suggested in the specifications, including
those in a hierachical search using the terms in the "path."

Dkt. No. 59 at 17:4-17.

Fry's fails to explain how "keyword searches familiar to all who have used search engines" support Fry's proposed claim construction as a legal matter.  In any event, Fry's proposed construction ignores the plain language of the '453 Patent.  The '453 Patent claims a system with at least a two-level cascading commerce menu that "automatically generate[s] a search string" based on a consumer's selection (Claim 1) and/or "automatically generat[es] a search request based at least in part" on a consumer's selection (Claim 9).  Shaeffer Decl., Dkt. No. 58-2, Ex. "A" at Col. 13:58, 14:65.  Fry's would limit these terms to require something akin to a Google search.  *See* Dkt. No. 59 at 17:4-9.  The patent cannot be so limited.

The preferred embodiments set forth in the '453 Patent – which are the first place to look when interpreting the claim terms – highlight the broad nature of the claims.  The embodiments establish that the claims cannot be limited to a menu system that results in a traditional "Google-like" search:

> In one embodiment, one or more of the category listings can represent a hyperlink to the desired content, which can be located on a server, such as a server in the World Wide Web, that is connected to a network, such as the Internet or some other network.

Shaeffer Decl., Dkt. No. 58-2, Ex. "A," Col. 3:33-39 (emphasis added).  The '453 Patent also describes a preferred embodiment that depends upon the use of a URL as a search term:

> . . . The fifth submenu can list the manufacturer's name and the model number of all CD-RW drives costing between $200-$300.  If the consumer clicks on a given desired model listing, the consumer can be hyperlinked to a catalog page providing information about the selected model . . . In one embodiment, the hyperlink is to a site located across a network . . . .

*Id*. Ex. "A," Col. 4:3-19 (emphasis added).[4]

---

[4] The Rebuttal Report of Dr. James Smith ("Smith Report") is attached to the Shaeffer Decl., Dkt. Nos. 57, 58-5, Ex "D."  Dr. Smith also notes that, to a person

Fry's reference to the Axaopoulos patent, and its alleged keyword search specifications, is no more persuasive.  As discussed above, this prior art does not have bearing on the infringement issues here.  Even if it did, the Axaopoulos patent is explicitly discussing search engines and subsequent results, such as those found in a Yahoo search.  *See* Dkt. No. 59-10, Col. 1:31-2:46.  As addressed above, such construction is clearly impermissible where, as here, the construction is not supported by the specifications of the '453 Patent itself.  *Philips*, 415 F.3d at 1327.

Local.com maintains that these commonly understood terms do not need elaboration or clarification and should be applied in their widely accepted meaning.  *Id*. at 1314 ("In some cases, the ordinary meaning of claim language ... may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Biotec*, 249 F.3d at 1349; *Mentor*, 244 F.3d at 1380; *Duraflame,* 2013 WL 594241 at *3.  The meaning of the terms "automatically generating," "search string" and "search request," are readily apparent to a lay person.

Local.com proposes the following alternatives in the event the Court finds that these terms need construction:

<u>automatically generating</u>: creating something without requiring the user to manually enter the thing created

<u>search string</u>: one or more search terms

<u>search request</u>: a query that contains one or more search terms

These constructions are supported by the specifications as outlined above.  Should the Court determine these terms cannot be commonly understood, the Court should

---

with ordinary skill in the art, URLs can be search strings.  *See* Smith Report at pp. 9-11

1  adopt the constructions proposed by Local.com and reject those proposed by Fry's,

2  which have no support in either the extrinsic or intrinsic evidence.

3  **C.**    **"Cascading Menu"**

4

| Claim Term | Fry's Proposed Construction |
|---|---|
| "cascading [commerce] menu" | "A hierarchical system having a high level category menu and at least one second-level drop down subcategory menu." Dkt. No. 59 at 15:19-21. |

10        The terms "cascading menu" or "cascading commerce menu" or "cascading

11  [] level menu" appear throughout the '453 Patent in relation to Claims 1 and 9.  In

12  this case, Fry's asks the Court to interpret the term in an exceedingly broad manner

13  in an attempt to make out a case for invalidity based on prior art.  Remarkably,

14  Fry's provides no explicit basis for its proposed construction.  No good grounds

15  exist.

16        Fry's proposed construction appears to contend that "cascading menu" can

17  include a standard "dropdown menu" commonly found on most retail websites in

18  the 1990's.  *See* Dkt. No 59, at 15:19-21 ("at least one second-level drop down

19  subcategory menu"); *see also* Dkt. No. 34 at 16:4-9 ("the description in the

20  specifications [] only require two levels – a top level and a sub-level").  This

21  ignores the obvious requirement that the menu "cascade."  As depicted in Figures

22  1, 2 and 4 and addressed in detail in Local.com's Opening Claim Construction

23  Brief, a cascading menu provides the user with sequentially more granular

24  subcategories without having to load and reload additional pages.  *See* Ex. "A,"

25  Figs. 2, 4.  The '453 Patent makes clear that the menus depicted in Figures 1, 2 and

26  4 constitute "cascading commerce menu[s]."  Ex. "A," Col. 2:23-29.  Indeed, no

27  figure depicts any less than three cascading menus in sub-levels.  This is

28

1    distinguishable from the standard dropdown menu, which Fry's urges this Court to

2    include in the construction of cascading menu.

3         The language of the '453 Patent explicitly identified multi-tiered levels as a

4    defining feature of the cascading menu, noting that "the number of submenus is

5    not limited to five," (Ex. "A," Col. 4:19-10) which recognizes that number of

6    submenus has great bearing on the embodiment of the patent.  The '453 Patent also

7    uses language such as "further refined" (*Id.* at Col. 3:57, 64, Col. 4:3) and

8    "complex." (*Id.* at Col. 4:39).  The '453 Patent also explicitly states that "[t]he

9    cascading menu structure can be used to create complex string searches with

10   minimal effort on the part of the user or consumer."  *Id.* at Col. 4:38-40.  "By

11   contrast, a conventional system can require the consumer to laboriously click

12   through page after page of information, each separately transferred over the

13   internet, until the desired item is located."  *Id.* at Col. 4:49-52.

14        In addition to this intrinsic evidence of the meaning of "cascading menu,"

15   the extrinsic evidence also supports such a commonly understood definition.  The

16   relevant Freedictionary.com definition of "cascade" is "[a] succession of stages,

17   processes, operations, or units."[5]  The relevant Merriam-Webster definition of

18   "cascade" is "something arranged or occurring in a series or in a succession of

19   stages so that each stage derives from or acts upon the product of the preceding."[6]

20   That these definitions are found in a standard dictionary also supports Local.com's

21   assertion that these terms need not be construed.  An ordinary artisan would

22   understand that the term does not encompass the standard dropdown menu urged

23   by Fry's proposed construction.

24

25

26

---

27   [5] http://www.thefreedictionary.com/cascade

28   [6] http://www.merriam-webster.com/dictionary/cascade

Local.com believes that the term "cascading commerce menu" needs no construction. In the event, however, the Court feels otherwise, Local.com urges the Court to reject Fry's proposed construction, which is inconsistent with the specifications of the '453 Patent. If needed, Local.com proposes that the Court adopt the following construction:

> cascading menu: a hierarchical menu system in which the detection of a selection results in the display of successive sub-level menus adjacent to the chosen option as distinguished from a pull-down menu, which provides only a single menu stage.

This construction, unlike Fry's proposed construction, is consistent with the claim terms and the specifications.

**D.   "Customer"**

| Claim Term | Fry's Proposed Construction |
|---|---|
| "customer" | "A customer who has registered with the system"<br>Dkt. No. 59 at 15:23 |

Lastly, and perhaps most absurdly, Fry's offers its proposed construction for the term "customer." Ignoring the obvious meaning of this word – which would be understood by any potential trier of fact - Fry's is proposing a construction that limits a customer to one "who has registered with the system." Dkt. No. 59 at 15:23. In support of this construction, Fry's claims "customer is not the same as consumer." *Id.* at 18:10-11. While this may be true from a semantic standpoint, such a distinction does not support the construction urged by Fry's.

Fry's looks to Claims 10, 11 and 12 as support for its construction. *Id.* at 18:12-13 ("Dependent claims 10, 11, and 12 necessarily require that the 'customer' is user known to the system, since these claim elements are directed to providing the customer with some type of award to reward use of the system."). These non-

asserted dependent claims have no bearing on the meaning of customer for the purposes of Claims 1 and 9.

Though the '453 Patent describes one embodiment where a registration process stores a customer's information to complete a transaction, nothing implies that a user need be registered and logged in in order to be a "customer." The specifications note that, "[i]n *one* embodiment, the information needed for the transaction, such as a customer's name, address . . . has been stored in a record in a database through a registration process." Shaeffer Decl., Dkt. No. 58-2, Ex. "A," Col. 4:52-56 (emphasis added). This is, of course, simply one of many embodiments described in the specifications. That limitation is not set forth in the claims. Many other preferred embodiments described in the '453 Patent *do not* describe pre-registering the website users.

The term "customer" needs no construction. It is a term commonly understood and the '453 Patent specification does not deviate from such understanding. *Phillips*, 415 F.3d at 1314. If, however, the Court decides a construction is necessary, it should reject the strained definition offered by Fry's. The commonly accepted definitions of customer do not involve any limitations on the identification or registration of that user – even in the online context. Merriam Webster's first definition of "customer" is "one that purchases a commodity or service."[7] This is the accepted definition that would be understood by a person of ordinary skill in the art. Shaeffer Decl., Dkt. Nos. 57, 58-5, Ex. "D," at p. 11.

In the event the Court determines the term "customer" needs construction, Local.com proposes that the following:

customer: as a user visiting the website or commerce server system for the purpose of potentially purchasing a good or service.

---

[7] http://www.merriam-webster.com/dictionary/customer

Such a construction is supported not only by the common understanding of the term "customer," but also by the '453 Patent specifications detailed above. Conversely, Fry's urged construction would proscribe that definition down to a nonsensical subset of online shoppers who have actively registered or logged in to the website or commerce system.   That construction is not reasonable.

## IV.   **CONCLUSION**

For the reasons discussed above, this Court need not construe these claims and should reject the constructions proposed by Fry's.  If the Court concludes that any of these terms need construction, it should adopt the constructions proposed by Local.com.

DATED:  August 7, 2013                LATHROP & GAGE LLP


                                      By:      /s/ John Shaeffer
                                            JOHN SHAEFFER
                                            JEFF GRANT
                                            Attorneys for Plaintiff
                                            Local.com Corporation

LOCAL.COM'S OPPOSITION TO FRY'S CLAIM CONSTRUCTION BRIEF