H. G. Robert Fong, ESQ. State Bar # 53535
444 S. Flower Street, Suite 1500
Los Angeles CA 90071-1435
Telephone (213) 488-1400

Attorney for Defendant/Counter Plaintiff
FRY'S ELECTRONICS INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-RIVERSIDE

| | |
|---|---|
| Local.Com Corporation, *a Delaware Corporation*, <br><br> Plaintiff, <br><br> vs. <br><br> Fry's Electronics Inc., *a California Corporation*, <br><br> Defendant <br> _____ <br> Fry's Electronics Inc., *a California Corporation*, <br><br> Counter-Plaintiff <br><br> vs. <br><br> Local.Com Corporation, *a Delaware Corporation* <br><br> Counter-Defendant | Case No: 8:12-CV-00976-JGB-JPR <br><br> Honorable Judge Jesus G. Bernal <br><br> **FRY'S ELECTRONIC'S REPLY TO LOCAL.COM'S OPPOSITION TO FRY'S OPENING CLAIM CONSTRUCTION BRIEF** <br><br> Complaint Filed: June 18, 2012 <br><br> Hearing: <br> Date: August 28, 2013 <br> Time 10:00 A.M. <br> Location:  Room 260 / 1 <br><br> United States Federal Courthouse <br> 3470 Twelfth Street <br> Riverside, CA 92501-3801 |

**TO THE HONORABLE JESUS G. BERNAL, UNITED STATES DISTRICT COURT JUDGE, AND TO PLAINTIFF AND ITS ATTORNEY OF RECORD:**

# **TABLE OF CONTENTS**

I.   PROCEDURAL BACKGROUND..................................................................4

II.  HISTORY OF DISPUTED TERMS.........................................................4

III. THE IMPORTANT EFFECT OF THE "BANDWIDTH" ADMISSION ..........6

IV.  PRIOR ART, INDEFINITENESS AND INVALIDITY ARE RELEVANT......8

V.   FRY'S DEFINITIONS ARE CONSISTENT WITH THE SPECIFICATIONS 9

VI.  LOCAL.COM'S DEFINITION OF THE SECOND "PROVIDING" IS
BASELESS ...............................................................................................10

VII. HOW EPILOT FUNCTIONS IS HIGHLY RELEVANT................................10

VIII. THE "HYPERLINKING" REFERENCES ARE OF NO WEIGHT.............11

IX.  LOCAL.COM'S DEFINITION OF "SEARCH STINGS" AND "SEARCH
REQUESTS" IS INDEFINITE...................................................................11

X.   LOCAL.COM'S DEFINITION OF CASCADING MENU CONFLICTS WITH
THE CLAIM LANGUAGE. ......................................................................12

XI.  FRY'S DEFINITION OF "CUSTOMER" IS CORRECT................................12

XII. CONCLUSION………………………………………………………… 13

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

# **TABLE OF AUTHORITIES**

**CASES**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000 (Fed. Cir. 2006) ..........7

*All Dental Prodx, Inc. v. Advantage Dental Prods., Inc.,* 309 F.3d 77 (Fed. Cir. 2002) ..7

*Philips v. AWH Corp.,* 413 F.3D 1303 (Fed.Cir. 2005) ...................................................8

*Source Search Tech. LLC v. Lending Tree, LLC,* 588 F.3d 1063 (Fed. Cir. 2009)..........7

**Statutes**

35 U.S.C. §112..................................................................................................................6

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

Fry's provides the following in Reply to Local.com's Opposition to Fry's Claim Construction Brief.

## I. PROCEDURAL BACKGROUND.

The parties stipulated to a Markman hearing, not that Plaintiff would file a Markman motion. Local.com correctly points out the Markman Hearing was ordered in the Court's Order of July 10, 2013[1], Dkt. No. 56. This was a stipulated-to hearing, not a motion to be separately filed by either Plaintiff or Defendant. Defendant had at that time already filed, inter alia, three Motions in Limine. Ostensibly, the parties represented to the Court, that if it struck the then existing trial date, the case might resolve. It struck the trial date, put the Motions in Limine off calendar and set the date for the Markman hearing.

## II. HISTORY OF DISPUTED TERMS.

The history of disputes over at least some of the claimed terms harkens back to the discovery motion filed January 24, 2013, memorializing some of the disputes arising between the parties in 2012. The Stipulation (Dkt. No. 19 January 24,) described the ambiguities in these terms and the relevant file history then known to support Fry's position.[2] Local.com characterized the disagreement as a "quibble." *Id.* It was and is not a quibble. It was and is the ballgame. If the Court agrees with Fry's definitions or definitions which are crafted to distinguish what is in the prior art from what is claimed in the patent, that could well result in the granting of a Judgment as a Matter of Law, Motion for Summary Judgment (if the Court allows one), or simply dismissal based on non-infringement. If unclear definitions are, instead, are ordered, then a trial on

---

[1] Erroneously referenced in Fry's Opening Brief as "April 23 and May 12, 2009," as a result of failing to edit this language out from a pre-existing brief from which certain excerpts were taken.

[2] "Unfortunately, Fry's has resisted these efforts, and has exploited a quibble about the meaning of a definition to avoid its Rule 26 obligations altogether. " Dkt. No. 19, at 12:4-6.

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

invalidity might not be obviated.  A trial on invalidity would be complex and time consuming.  The prior art is extensive.  This prior art is referenced in Fry's Expert Report, Ex. 9 filed with the Declaration of H. G. Robert Fong in Support of Fry's Reply. The cited prior art therein does not even include the prior art referenced in the file history for the '378 patent, e.g. the Yamasaki patent and the McCollum application. Dkt. No. 58-7-9.  Local.com feigns ignorance of the file history and even the "Sanford" patent which was explicitly referenced in Dkt. No. 19 at 3:7-4:9, along with its effect on file history estoppel.  *Id*. at 4:9-5:11.

> "**The Sanford patent and its relation to the prosecution history of the patent-in-suit is vitally important to understand the positions taken by Fry's and why they are sound.** The United States Patent Office cited the Sanford patent to reject what were original Claims 1, 2, 3, 6, 7, and 21-25 of the patent-insuit.  These rejections were affirmed by the Board of Patent Appeals and Inference, resulting in the cancellations of original Claims 1, 2, 3, 6, 7, and 21-25. Fong, Ex.6 (File History) pp. 78, 179-182. That which was cancelled, but disclosed in the specifications, but not the allowed claims is dedicated to the public and cannot be a basis for an infringement claim. This includes the dynamically generated  submenus responsive to detection followed by providing updated submenu categories referenced in original claims 1, 2 and 3."
>
> Dkt. No. 19,  6:18-28.[3]

Local.com's denials of what is and is not important and feigned ignorance of the

---

[3] The past and current references to the file history for both the '453 patent was "tethered to claim construction 8 months ago in Dkt. No. 19, and the file history of the '378 patent tethered in the Fry's Markman briefs as requiring a highly restrictive interpretation of the asserted claims.

history of this case do not comport with F.R.C.P. Rule 1, that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."   Local.com's willful blindness coupled with its refusal to exchange definitions is antithetical to Rule 1's goals.  More specifically, what it now proposes for alternative definitions would prolong the final determination of this action by giving what will be a lay jury little or no guidance to perform their function, which is to resolve disputed facts.  Local.com's proposed definition relating to the second "providing" step goes so far outside the context of how that term is used in Claims 1 and 9, that its proposed definition invents words and conditions not present in the Claims: "supplying, via a programming language such as javascript, a user with the results of their search selection."  Dkt. No. 61, 7:2-3.  The Claims reflect that search results would not even occur until after the automatic generation of a search string; Local.com would render these steps superfluous.

## III.   THE IMPORTANT EFFECT OF THE "BANDWIDTH" ADMISSION

Local.com admitted in its Opening Brief that an important reason behind the patent-in-suit was "BANDWITH."  Dkt. No. 58, 1:10-15.  It has not contested Fry's rough calculation that the 64,000,000 category cascading menu with the 28Kbaud modem described in the specifications would have taken "**634 hours** to download just the text file used to generate the cascading menu described in the '453 patent" cited at Dkt. No. 59, 5:17-21.  That is because the mathematics are conservative.[4]  Fry's raised the BANDWIDTH problem as a problem addressed its opening brief for good reason - it explains the reason for the separate "providing," "detecting" and "providing" steps needed to parse the amount of information flowing from the server to the client for the

---

[4] The math is based on there being 8 bits in every byte, that ASCII text is in 8 bit format, and assuming 8 bits X 11 ASCII characters per menu item X yield roughly 96 bits per small category menu of 11 ASCII character, or roughly 100 bits.  64,000,000 X 100 bits = 6,400,000,000 or 6.4 billion bits needed for the text download.  Assuming the average number of ASCII characters needed to be larger than 11 characters comprised of letters and numbers, the download time would increase proportionately.

system to be practical and as understood by Practitioner of Ordinary Skill in the Art in 1999.  The goal of a Markman is to ascertain what that definition is in lay terms, in the context of the intrinsic record, not by going to dictionaries whose authors have no contextual knowledge of how the disputed terms are used, let alone what the "art" is.

Fry's proposed definitions for "providing," "detecting" and "providing" are appropriately segregated to provide clear, unequivocal tools for a lay jury to find that the Fry's website either did or did not practice these limitations in each of these claim elements.  Local.com's provides no assistance and in fact <u>fabricates</u> the end result of the second "providing" step that is not in the claim language.  The grammatical "subject" of each of the gerunds, "providing," "detecting" and "providing" are indefinite, potentially subjecting the '453 patent invalid under 35 U.S.C. §112 ¶ 2.

"Indefiniteness" is an invalidity defense based on § 112, ¶ 2, which requires that the claims of a patent "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." § 112. "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, Inc. v. Advantage Dental Prods., Inc*., 309 F.3d 774, 779 (Fed. Cir. 2002). Indefiniteness is judged not according to the subjective impressions of any one person, but objectively based on how a person skilled in the art would understand the term. *Source Search Tech. LLC v. Lending Tree, LLC*, 588 F.3d 1063 (Fed. Cir. 2009) ("[T]his court measures indefiniteness according to an objective measure that recognizes artisans of ordinary skill are not mindless 'automatons.'").When a claim cannot be construed, it is indefinite, and therefore invalid. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006). Some authority suggests that all indefiniteness issues boil down to an issue of claim construction. See *id.* ("If a claim is amenable to construction, even though the task may be formidable and the conclusion may be one over which reasonable persons will

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

disagree, the claim is not indefinite."). However, there are instances where a claim can be construed, but cannot be meaningfully applied, in which case the claim is also invalid for indefiniteness.

Here, if the "providing, detecting, providing" trio of steps is blurred by the definitions, they would fail to achieve the stated purpose for the patent - to address the BANDWIDTH problem that Local.com has admitted was the *raison d'etre* or reason for the '453's existence and purpose – addressing bandwidth in an era of 28K baud modems.

The blurring of the definitions proffered by Local.com would enable a jury to find that simply providing a cascading menu like that described in the Sanford patent, Encarta '98 and much other prior art, where the cascading menu "linked" to a website would infringe, regardless of there being separate providing, detecting and providing steps. The blurred definitions now proffered by Local.com are hence an unacceptable tool for the jury, because they fail to take into account the very reason for the need to parse each transmission of subcategory data by a server, after the server detects the need to provide the bits and bytes needed each new subcategory. Likewise, the user could care less about the fact that he or she only received the 100 categories out of the 64,000,000 categories available, so long as its functionality were transparent and a product of as needed downloads.

## IV.  PRIOR ART, INDEFINITENESS AND INVALIDITY ARE RELEVANT

Local.com argues that considerations of validity are inappropriate, disregarding its own citation to *Philips v. AWH Corp.*, 413 F.3D 1303, 1327 (Fed.Cir. 2005). It feigns ignorance of what was presented to its own expert, James Smith, whose report it has submitted, and to the Fry's expert report[5] to which its expert sought to rebut. These claims appear to be disingenuously asserted to in an attempt to avoid reality. Fry's

---

[5] A redacted version of this report is filed herewith as Exhibit 9.

believes that it has clearly explained why the '453 patent implicitly requires the parsing of data downloads into small "as needed" chunks to create each successive category in a cascading menu the client computer can display.  Local.com's brief at Dkt. No. 61, 5:7-20 is an unintelligible misinterpretation of Fry's position.  What did happen with when the Fry's website actually "detected" a cursor position on the top level menu is that it did not provide a "cascading menu."  Instead, clicking on the top menu with detection by the Fry's server resulted not in the display of a cascading menu, but the downloading and displaying of a new left hand navigation menu, a feature Local.com readily admits does not infringe the '453 patent.  If the Fry's server does not detect the cursor position from the click, the already fully downloaded cascading menu would function as such without any further downloading of data from the Fry's server or "detecting" of that floating cursor by the Fry's server.  The reason for this is that Fry's system as it related to the cascading menu worked exactly as described in the Sanford patent, not as contrasted with the '453 patent.

## V.  <u>FRY'S DEFINITIONS ARE CONSISTENT WITH THE SPECIFICATIONS</u>

Local.com's claims that Fry's failed to address what it contends is in the specifications has already been addressed in its Opposition to Local.com's Opening Markman Brief (Dkt. No. 61) and Fry's Opening Brief (Dkt. No. 59).  It addressed Local.com's reference to the menu being "stored" (Dkt. No. 61, 6:1-8) at Dkt. No. 62, 12:1-15.  Local.com's construction is misplaced, because it fails to consider the fact that the "providing," "detecting" and second "providing" steps have to be performed before the "consumer computer or terminal" accesses each "submenu."  As pointed out in Fry's Opposing Brief, *Id.*, the claimed storing feature was already build into well known Internet Browsers like Netscape 3 and 4, just so each page already downloaded did not have to be re-downloaded.  The '453 patent mentions no use of any browser, let alone with a cache that stored webpages, hence its reference to storage would be to an

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

embodiment that might store what was downloaded, if the browser did not.

## VI.   LOCAL.COM'S DEFINITION OF THE SECOND "PROVIDING" IS BASELESS

Local.com proffers a "providing" definition at Dkt. No. 61, 7:2-3 that is fabricated from outside the intrinsic evidence.  The second "providing" step in Claims 1 and 9 has nothing to do with supplying "a user with the results of their search selection." The "search" language in Claims 1 and 9 appear well after the second "providing" step, "cascading menu" creation, "automatic generation," and "search" terms.  Eliminating the intervening steps to provide the proffered definition literally rewrites the patent in violation of fundamental rules of construction referenced in Dkt. No. 62, 9:8-10:3.  It must therefore be rejected.

## VII.   HOW EPILOT FUNCTIONS IS HIGHLY RELEVANT

Local.com argues that "how ePilot actually functions today" is relevant.  It's very simple.  ePilot is shown in the Figures of the '453 patent.  How it actually works clearly demonstrates that the definitions proposed by Fry's are at least plausible, because the definitions describe exactly how ePilot works in the real world.  What is very clear is that **Local.com does not contest this undisputed fact**.  That fact is that when a category is clicked on ePilot the search terms are automatically generated and inserted into the "search box," the same search boxes shown in the patent.  Those search boxes are known by the general public and Persons of Ordinary Skill in the Art to be used to manually insert the "Google-like" search terms and search strings that Local.com simply wants to ignore.  That kind of willful blindness is why we are still litigating this case, even after massive disclosures of prior art by Fry's to Local.com and pointing out irrefutable proof of the meaning of "automatic generation," "search terms," "search requests" and how these terms contrast with what was disclosed in the Sanford patent. The Sanford patent and the LLBean websites are conveniently forgotten as references that were hotly debated more than 8 months ago in Dkt. No. 19.  Willful blindness and

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

selective amnesia are relevant to a finding of exceptional case.

## VIII.  THE "HYPERLINKING" REFERENCES ARE OF NO WEIGHT

Fry's addressed the "hyperlinking" argument at Dkt. No. 61 in at Dkt. No. 62, 12:17-14:7.  Linking and hyperlinking are simply not claimed, because that attempt failed with resulting rejections and cancellations based on the Sanford patent and extensively briefed as far back as Dkt. No. 19.  The specifications, and in particular the Figures, also show many things that are simply not claimed, like a webpage with a search box and cascading menu.  The fact that one or more categories may be a hyperlink logically means others are not hyperlinks, but instead generate a "search string."   The same logic applies to the reference to the "fifth submenu" argument at Dkt. No. 61, 9:18-26.  The infringing steps of providing, detecting, and providing have already taken place with presumably some categories that do not link, but instead practice the patent by causing the automatic generation from the first subcategory selection of a search sting.  What happens after that at the fifth submenu level is irrelevant to an infringement analysis.  Proper definitions will insure that the jury will not be mislead by the references to linking not claimed in the patent claims.

## IX.  LOCAL.COM'S DEFINITION OF "SEARCH STINGS" AND "SEARCH REQUESTS" IS INDEFINITE

The proposed definitions from Local.com suffer from their failure to differentiate the automatic generation of a link like those disclosed in Sanford, from search "terms" that describe what is being searched.  Local.com cites its expert's opinion that a URL "can" be a search.  The problem is to come up with a definition that a jury can use to differentiate a URL that is a search from one that is not, but instead a link.  The differentiation between a "link" and a "search sting" is clearly spelled out in Fry's proposed definitions.  The definitions proposed by Local.com are too general and could cause the jury to find infringement by someone merely implementing the cascading menu system disclosed by Sanford.  Such a definition would fail in its essential function to facilitate the finder of fact ability to distinguish what does or does not infringe

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

without ensnaring the known prior art.  Fry's definitions eliminate this possibility while doing justice to what is claimed.  Local.com's definitions of search string and search request do not.  They fail to take into account the intrinsic evidence, whereas Fry's definitions harmonize the intrinsic evidence with the claim language.

## X.   LOCAL.COM'S DEFINITION OF CASCADING MENU CONFLICTS WITH THE CLAIM LANGUAGE.

Local.com has failed to explain why the definition it has proffered conflicts with claim language that only requires a "first set of product subcategories" to qualify and to infringe Claims 1 and 9 of the '453 patent.  It points to already fully expanded cascading menus in the Figures which show multi-level sub-categories that might be displayed after the "first set of product subcategories" referenced in Claims 1 and 9.  But, so what?  Anyone who has used a classic cascading menu [where subcategories do not have to be "provided" after a server "detects"] does not see any subcategories being displayed by a computer, until a subcategory is clicked or the program detects a hover and client computer responds.  The import of this is that all of the cascading menus illustrated in the Figures become visible only after the "provide, detect and provide" steps have been taken, and the menu responds to each hover or click over one menu after the other.  As stated in Fry's Dkt. No. 62, 14:9-15:11, the Figures simply do not define the limits of what is and is not a "cascading" menu as referenced in Claims 1 and 9.  **Claims 1 and 9 themselves define the term "cascading menu," not the indefinite illustrations in the specifications taken out of context.**  The Claims describe the characteristics of a drop down menu with a single subcategory.  As amply supported in Fry's briefs, the use of general purpose dictionaries in this situation is inappropriate and conflicts with legal authority.

///

## XI.   FRY'S DEFINITION OF "CUSTOMER" IS CORRECT

Local.com thinks customer is a general purpose term as used in the '453 patent.  That position is untenable, because it conflicts with the patent is describes.  The patent

12

describes not a merchant selling products online, but instead a means of generating "rewards[6]" or "credits" for "surfing the net.[7]"  Retailers like Fry's do not pay "customers" to "surf the web... ."  What is the "customer" referenced in Claim 9 a "customer" of?  INFORMATION supplied by the system to earn the registered person, called a "customer" money for exposing himself or herself to advertisements and any and all sorts without ever even having an intention to buy a single thing.  The patent suggests an embodiment where the "customer" can earn more, if it in fact he or she purchases something, but purchasing something is **irrelevant** to earning the status of what a becoming a "customer" for the information.  That status is earned, as referenced in Fry's brief, by the person desiring to become an information customer to "log in" as a customer as referenced in Figs. 11-13.  The Suppliers pay the service provider money for advertisements when the "customer" clicks on the webpage or advertisement.  The service provider is paid.  Figs. 5-7 show the source of the advertisement money paid to the service provider which is then split with the customer."  This business method paradigm of using a cascading menu with advertising rewards split with a "customer" for merely accessing information to "make money" by "surfing the net" is not what Fry's has used, nor likely any other sane internet retailer.

Fry's definition of "customer" takes into account the intrinsic evidence; Local.com's definition does not.  Fry's definition distinguishes a "customer" from a "non-customer."  Local.com's definition does not.  Local.com's definition entirely fails to address websurfers looking to earn money surfing the net, regardless of whether they click on the "Weather," "News" or any other category, whereas Fry's definition takes this into account.

## XII.  <u>CONCLUSION.</u>

For all the reasons stated in its three briefs, Fry's respectfully requests that the

---

[6] Ex. 1, Col 5:64-5:5; 15:5-15 (Claims 10, 11 and 12).
[7] Ex. 1, Fig. 5, 6 & 7 "Get paid to surf the web ... "

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

Court adopt its proposed definitions.

Dated:  August 14, 2013                Respectfully Submitted for the Defendant


                                       By:  __/s/  H.G. Robert Fong____
                                            H.G. Robert Fong
                                            Attorney for DEFENDANT
                                            FRY'S ELECTRONICS INC.

DEFENDANT FRY'S REPLY TO IT'S OPENING CLAIM CONSTRUCTION BRIEF

1